STATE OF NORTH CAROLINA v. SCOTT EVANS

No. COA99-1527

(Filed 7 August 2001)

**Constitutional Law— double jeopardy—driving while impaired—revocation of driver's license—civil penalty**

The trial court erred in a driving while impaired case by concluding that the 30-day civil revocation of defendant's driver's license under N.C.G.S. § 20-16.5 constitutes a criminal penalty in violation of double jeopardy, because: (1) any deterrent effect a driver's license revocation may have upon the impaired driver is merely incidental to the overriding purpose of protecting the public's safety; (2) the sanctions imposed by the statute are not excessive in relation to the remedial purpose of removing impaired drivers from the highway while they are a risk to them-

selves and others; and (3) N.C.G.S. § 20-16.5 is neither punitive in purpose or effect.

Appeal by the State from order entered 12 July 1999 by Judge Wade Barber in Superior Court, Chatham County. Heard in the Court of Appeals 17 August 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III and Associate Attorney General Stacey T. Carter, for the State.*

*Amber A. Corbin, P.C., by Amber A. Corbin, for defendant-appellee.*

McGEE, Judge.

Scott Evans (defendant) was charged with driving while impaired (DWI) pursuant to N.C. Gen. Stat. § 20-138.1 on 4 April 1998. Following his arrest, an Intoxilizer test was administered to the sixteen-year-old defendant which revealed a blood alcohol concentration of 0.08 or greater. Pursuant to N.C. Gen. Stat. § 20-16.5, the defendant's driver's license was revoked for thirty days and until the payment of a $50.00 restoration fee. At his first appearance before the trial court on 20 May 1998 for the criminal charge of DWI, defendant completed an affidavit of indigency. Counsel was appointed to represent defendant. Defendant paid the $50.00 restoration fee to the Chatham County Clerk of Court on 26 June 1998 to secure the return of his driver's license, pending the outcome of his criminal trial. Defendant did not petition the trial court for a 20-day limited driving privilege as provided by N.C.G.S. § 20-16.5(p).

Defendant's criminal DWI charge was called for trial on 1 July 1998 in Chatham County District Court before Judge Alonzo B. Coleman. The same day, defendant moved to dismiss the DWI charge, arguing that the 30-day revocation of his driver's license was punishment. He contended that the subsequent criminal prosecution and punishment for driving while impaired under N.C.G.S. § 20-138.1 violated his double jeopardy rights. Judge Coleman granted defendant's motion to dismiss. The State filed a notice of appeal on 9 July 1998, pursuant to N.C. Gen. Stat. § 15A-1432(a)(1) in Superior Court, Chatham County.

The State's appeal was heard on 21 September 1998 by Superior Court Judge Wade Barber. At the hearing, the State and de-

fendant agreed that eight pending DWI cases, all raising the same basic issue of double jeopardy, would be heard together and their evidence consolidated.

Judge Barber entered an order on 12 July 1999 reversing the district court's order as to the four non-indigent DWI defendants and remanded those defendants to the district court for a criminal DWI trial. In so doing, the court concluded that criminal prosecution of the non-indigent DWI defendants after the revocation of their drivers' licenses would not violate their double jeopardy rights. Judge Barber, however, affirmed the district court's order to dismiss the DWI criminal charges as to the four indigent DWI defendants, including defendant in this case. The court concluded that the Double Jeopardy Clause of the United States Constitution barred criminal prosecution of indigent DWI defendants whose licenses had been civilly revoked for thirty days because "the effort and expense of obtaining a limited driving privilege were completely unmanageable." The State appealed the 12 July 1999 order, pursuant to N.C. Gen. Stat. § 15A-1445(a)(1), and defendant cross-assigned errors.

On appeal, the State contends that the superior court committed reversible error by concluding that the 30-day revocation of defendant's driver's license pursuant to N.C.G.S. § 20-16.5 constitutes punishment for purposes of double jeopardy analysis under the United States Constitution. The State argues that the 30-day driver's license revocation contained in N.C.G.S. § 20-16.5 is a civil sanction promulgated to support highway safety. Therefore, the State argues, because the license revocation is a civil sanction rather than a criminal penalty, the Double Jeopardy Clause does not bar defendant's subsequent criminal prosecution for DWI. By a cross-assignment of error, defendant argues, *inter alia*, that N.C.G.S. § 20-16.5 is unconstitutional in that it violates the Double Jeopardy Clauses contained in the United States and North Carolina Constitutions. Defendant contends that under *Hudson v. United States*, 522 U.S. 93, 139 L. Ed. 2d 450 (1997), the 30-day driver's license revocation contained in N.C.G.S. § 20-16.5 constitutes a criminal punishment and, therefore, the double jeopardy doctrine is properly invoked to prevent defendant's subsequent criminal prosecution for DWI.

The Double Jeopardy Clause prohibits "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767 (1994). "The Law of the Land Clause incorpo-

rates similar protections under the North Carolina Constitution." *State v. Oliver*, 343 N.C. 202, 205, 470 S.E.2d 16, 18 (1996) (citing N.C. Const., art. I, § 19). On appeal, defendant relies upon *Hudson v. United States*, 522 U.S. 93, 139 L. Ed. 2d 450 (1997), cited in the trial court's 12 July 1999 order, to support his argument that the civil revocation of his driver's license constituted punishment for double jeopardy purposes under both the United States and North Carolina Constitutions.

In *Hudson*, the United States Supreme Court modified the standard for double jeopardy analysis. According to the *Hudson* Court, "the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." *Id.* at 98-99, 139 L. Ed. 2d at 458 (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 87 L. Ed. 443, 452 (1943)). Instead, "[t]he [Double Jeopardy] Clause protects only against the imposition of multiple criminal punishments for the same offense." *Id.* at 99, 139 L. Ed. 2d at 458 (citation omitted). The Court then advanced a two-part inquiry for determining whether a statutory scheme imposes punishment for double jeopardy purposes:

Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect" as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty."

In evaluating the second part of the analysis, the *Hudson* Court counseled in favor of courts applying the factors previously listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 660-61 (1963). *Hudson*, 522 U.S. at 99, 139 L. Ed. 2d at 459. These factors include:

(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is

assignable for it"; and (7) "whether it appears excessive in rela-
tion to the alternative purpose assigned."

*Id.* at 99-100, 139 L. Ed. 2d at 459. The Court cautioned in *Hudson* that
no one factor is controlling. *Id.* at 101, 139 L. Ed. 2d at 460. In *Seling
v. Young,* 531 U.S. 250, 262, 148 L. Ed. 2d 734, 746 (2001), the United
States Supreme Court also stated that "the clearest proof is required
to override legislative intent and conclude that an Act denominated
civil is punitive in purpose or effect."

Thus, pursuant to the two-part inquiry articulated in *Hudson,* we
must begin by examining the purpose behind N.C.G.S. § 20-16.5, the
statute at issue. N.C.G.S. § 20-16.5 was amended by the General
Assembly effective 1 December 1997. Prior to the 1 December 1997
amendment, the statute provided for a 10-day pre-trial revocation of
an individual's driver's license for operating a motor vehicle with an
alcohol concentration of 00.08 or greater or for refusing to submit to
a chemical analysis. The amendment to N.C.G.S. § 20-16.5 provides
for an immediate 30-day civil license revocation "for certain persons
charged with implied-consent offenses." An individual's driver's
license is subject to revocation under N.C.G.S. § 20-16.5 if:

(1) A charging officer has reasonable grounds to believe that the
person has committed an offense subject to the implied-consent
provisions of G.S. 20-16.2;

(2) The person is charged with that offense as provided in G.S.
20-16.2(a);

(3) The charging officer and the chemical analyst comply with
the procedures of G.S. 20-16.2 and G.S. 20-139.1 in requiring the
person's submission to or procuring a chemical analysis; and

(4) The person:

    a. Willfully refuses to submit to the chemical analysis;

    b. Has an alcohol concentration of 0.08 or more within a rel-
    evant time after the driving;

    c. Has an alcohol concentration of 0.04 or more at any rele-
    vant time after the driving of a commercial vehicle; or

    d. Has any alcohol concentration at any relevant time after
    the driving and the person is under 21 years of age.

N.C.G.S. § 20-16.5(b). The statute does, however, provide for a limited driving privilege during the 30-day period of revocation, so long as:

> (1) At the time of the alleged offense the person held either a valid drivers license or a license that had been expired for less than one year;
>
> (2) Does not have an unresolved pending charge involving impaired driving except the charge for which the license is currently revoked . . . or additional convictions of an offense involving impaired driving since being charged for the violation [at issue];
>
> (3) The person's license has been revoked for at least 10 days if the revocation is for 30 days . . .; and
>
> (4) The person has obtained a substance abuse assessment from a mental health facility and registers for and agrees to participate in any recommended training or treatment program.

N.C.G.S. § 20-16.5(p).

In the case before us, defendant argues that although N.C.G.S. § 20-16.5 is entitled "Immediate civil license revocation for certain persons charged with implied-consent offenses," when the General Assembly amended the statute in 1997, the statutory scheme became so punitive, by tripling the revocation period, as to transform the remedy into a criminal punishment.

In support of his contention, defendant presents as evidence a statement by then Governor James B. Hunt, Jr. that the 30-day revocation was introduced as a part of the State's on-going efforts to "crack down on drunk drivers and let them know they'll pay the price." *See* "Gov. Hunt Announces Plans to Toughen Penalties for Drunk Drivers," Press Release, State of North Carolina, Office of the Governor, 16 October 1996. Defendant asserts that this statement, as well as statements from the Governor's Highway Safety Committee, prove that the extension of the 10-day revocation period was intended to be punitive.

When construing statutes, our courts should always give effect to the intent of the General Assembly. *State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978). However,

> [w]hile the cardinal principle of statutory construction is that the words of the statute must be given the meaning which will carry

out the intent of the Legislature . . . . [t]estimony, even by members of the Legislature which adopted the statute, as to its purpose and the construction intended to be given by the Legislature to its terms, is not competent evidence upon which the court can make its determination as to the meaning of the statutory provision.

*Milk Commission v. Food Stores*, 270 N.C. 323, 332-33, 154 S.E.2d 548, 555 (1967). Thus, "[e]ven the commentaries printed with the North Carolina General Statutes, which were not enacted into law by the General Assembly, are not treated as binding authority by this Court." *Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 657, 403 S.E.2d 291, 295 (1991). Accordingly, press releases and commission recommendations offered by defendant as evidence of the punitive purpose behind N.C.G.S. § 20-16.5 are in no manner binding authority on this Court.

In *Henry v. Edmisten*, 315 N.C. 474, 340 S.E.2d 720 (1986) and *State v. Oliver*, 343 N.C. 202, 470 S.E.2d 16 (1996), our Supreme Court interpreted the prior version of N.C.G.S. § 20-16.5. Both the *Henry* Court and the *Oliver* Court held that the 10-day driver's license revocation did not constitute punishment for purposes of double jeopardy analysis under either the Double Jeopardy Clause of the United States Constitution or the Law of the Land Clause of the North Carolina Constitution.

In *Henry*, our Supreme Court clearly established that the original legislative intent of N.C.G.S. § 20-16.5 was the promotion of highway safety. In *Henry*, the plaintiffs, both of whom were charged with driving while impaired, argued that the 10-day revocation prescribed by N.C.G.S. § 20-16.5 was "not reasonably related to the state's interest in shielding the public from the danger posed by a driver who fails a breath test." *Henry*, 315 N.C. at 489, 340 S.E.2d at 730. The *Henry* plaintiffs further argued that the "ten-day revocation [was] unnecessarily long if the purpose [was] to protect the public from the hazards of an impaired driver on the particular occasion for which he [was] arrested." *Id.* The plaintiffs then suggested that "a twenty-four hour revocation would be sufficient to achieve this purpose." *Id.* Our Supreme Court disagreed, stating:

Although one purpose of summary license revocation is to safeguard the public from an impaired driver on the particular occasion on which the driver is arrested, the revocation has a broader purpose. The statute authorizing revocation assumes implicitly

that drivers who have driven impaired on one occasion pose an appreciable risk of repeating their conduct. We cannot say this assumption is so unreasonable as to prevent the state from summarily suspending a person's driving privileges.

*Id.* The Court then concluded that "the summary revocation procedure of § 16.5 is not a punishment but a highway safety measure . . . the bill as finally enacted reflects an intent by the legislature for the revocation provision to be a remedial measure." *Id.* at 495, 340 S.E.2d at 734.

Ten years later in *Oliver*, our Supreme Court again examined N.C.G.S. § 20-16.5. The *Oliver* Court first noted that "[h]istorically this Court has long viewed drivers' license revocations as civil, not criminal, in nature." *Oliver*, 343 N.C. at 207, 470 S.E.2d at 20. The Court also stated that "[a]n impaired driver presents an immediate, emergency situation, and swift action is required to remove the unfit driver from the highways in order to protect the public." *Id.* at 209, 470 S.E.2d at 21. Because "[s]uch a person . . . represents a demonstrated present as well as [an] appreciable future hazard to highway safety, [t]he safety of the impaired driver and other people using the [S]tate's highways depends upon immediately denying the impaired driver access to the public roads." *Id.* at 208, 470 S.E.2d at 20, (quoting *Henry v. Edmisten*, 315 N.C. 474, 494, 340 S.E.2d 720, 733 (1986)). Moreover, the Court stated,

> [our Court] has long held that a driver's license 'is not a natural or unrestricted right, nor is it a contract or property right in the constitutional sense. It is a conditional privilege, and the General Assembly has full authority to prescribe the conditions upon which licenses may be issued and revoked. The ten-day driver's license revocation . . . merely signifies the failure of the driver to adhere to the conditions imposed by the legislature on the driver's license. As such, it is not punishment.

*Id.* at 210, 470 S.E.2d at 21 (citations omitted).

The only relevant difference between N.C.G.S. § 20-16.5 when it was analyzed and interpreted in *Henry* and *Oliver* and the statute in its present form is that the revocation period has been increased from ten days to thirty days. The function of the legislation, however, did not change. The function and intent of the statute is to remove from our highways drivers who either cannot or will not operate a motor vehicle safely and soberly. The purpose of license revocation in

N.C.G.S. § 20-16.5 is clearly to prevent unsafe and unfit drivers from operating vehicles and endangering the citizens of North Carolina. Moreover, neither *Henry* nor *Oliver* predicated their double jeopardy analysis upon the length of the revocation. Rather, both cases referred to driver's license revocations generally. Defendant has offered no compelling reason on appeal for us to depart from the legislative intent and purpose of N.C.G.S. § 20-16.5 as established by our Supreme Court in *Henry* and *Oliver*. Although we find no punitive purpose on the face of N.C.G.S. § 20-16.5, we are aware that, at some point, a further increase in the revocation period by the General Assembly becomes excessive, even when considered in light of the well-established goals of N.C.G.S. § 20-16.5. Whether it is a further doubling or tripling of the revocation period, there is a point at which the length of time can no longer serve a legitimate remedial purpose, and the revocation provision could indeed violate the Double Jeopardy Clause.

We must next examine whether the effect of N.C.G.S. § 20-16.5 is punitive in that it punishes a defendant twice for the same offense. In examining the effect of the law, the factors articulated in *Kennedy* "provide useful guideposts." *Hudson*, 522 U.S. at 99, 139 L. Ed. 2d at 459; *see State v. Thompson*, 349 N.C. 483, 508 S.E.2d 277 (1998). We therefore consider the seven *Kennedy* factors. However, because N.C.G.S. § 20-16.5, as enacted, reflects an "intent by the legislature for the revocation provision to be a remedial measure," *Henry*, 315 N.C. at 495, 340 S.E.2d at 734, " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 100, 139 L. Ed. 2d at 459 (citation omitted).

The first *Kennedy* factor requires a review of "[w]hether the sanction involves an affirmative disability or restraint." *Hudson*, 522 U.S. at 99, 139 L. Ed. 2d at 459 (citation omitted). In this case, defendant argues that the 30-day driver's license revocation and $50.00 revocation fee authorized by N.C.G.S. § 20-16.5 amount to an "affirmative disability or restraint." We disagree.

In *Hudson*, the Court stated that an "affirmative disability or restraint" generally is some sanction "approaching the 'infamous punishment' of imprisonment." *Hudson*, 522 U.S. at 104, 139 L. Ed. 2d at 462 (citations omitted). The *Hudson* Court concluded that the sanction at issue, indefinite prohibition from participating in the banking industry, did not involve an "affirmative disability or restraint." *Id.* Likewise, in defendant's case, a 30-day driver's license revocation and

$50.00 revocation fee cannot be said to "approach the 'infamous punishment' of imprisonment." *Id.* (citation omitted).

The second *Kennedy* factor asks whether, from a historical perspective, the sanction has been viewed as punishment. Historically, punishment has taken the forms of incarceration and incapacitation. This form of punishment is available under N.C. Gen. Stat. § 20-138.1, the DWI criminal statute. Incarceration and incapacitation are not available under N.C.G.S. § 20-16.5. Moreover, "revocation of a privilege voluntarily given," such as a driver's license in this case, "is characteristically free of the punitive element." *Hudson,* 522 U.S. at 104, 139 L. Ed. 2d at 462, (quoting *Helvering v. Mitchell,* 303 U.S. 391, 399-400, 82 L. Ed. 917, 922 (1938)); *see also Oliver,* 343 N.C. at 210, 470 S.E.2d at 21 (stating that a driver's license is a conditional privilege for which the General Assembly may prescribe conditions upon which licenses may be issued and revoked). Finally, as previously noted in *Oliver,* our Supreme Court stated that "this Court has long viewed drivers' license revocations as civil, not criminal, in nature." *Id.* at 207, 470 S.E.2d at 20. Accordingly, defendant has failed to establish the second *Kennedy* factor.

We agree with the State and defendant that the third *Kennedy* factor, a finding of scienter, is not an element of the 30-day license revocation under N.C.G.S. § 20-16.5.

The fourth *Kennedy* factor asks whether the sanction promotes the "traditional aims of punishment—retribution and deterrence." *Hudson,* 522 U.S. at 99, 139 L. Ed. 2d at 459 (citation omitted). The Supreme Court in *Hudson* noted, however, that "all civil penalties have some deterrent effect." *Id.* at 102, 139 L. Ed. 2d at 461. "If a sanction must be 'solely' remedial (*i.e.,* entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." *Id.* Moreover, the Court continued, "the mere presence of a [deterrent quality] is insufficient to render a sanction criminal [because] deterrence 'may serve civil, as well as criminal goals.' " *Id.* at 105, 139 L. Ed. 2d at 463 (quoting *United States v. Ursery,* 518 U.S. 267, 292, 135 L. Ed. 2d 549, 570 (1996)).

We acknowledge that N.C.G.S. § 20-16.5 operates as a deterrent to driving while impaired. Certainly, persons who choose to drive while impaired know that if their actions are observed by law enforcement, they will be charged with DWI and face a temporary license revocation. However, "any deterrent effect a driver's license revocation may have upon the impaired driver is merely incidental to the overriding

purpose of protecting the public's safety." *Oliver*, 343 N.C. at 209-10, 470 S.E.2d at 21. Thus, we conclude that although N.C.G.S. § 20-16.5 does operate as a deterrent, the deterrent effect of N.C.G.S. § 20-16.5 is insufficient to implicate double jeopardy. Accordingly, this factor does not weigh in defendant's favor.

The fifth *Kennedy* factor asks "whether the behavior to which [the statute] applies is already a crime." *Hudson*, 522 U.S. at 99, 139 L. Ed. 2d at 459 (citation omitted). Violating the implied consent offense of driving with an alcohol concentration of 0.08 or more is a crime under N.C.G.S. § 20-138.1. However, "[t]his fact is insufficient to render" the 30-day driver's license revocation and $50.00 revocation fee "criminally punitive, particularly in the double jeopardy context." *Id.* at 105, 139 L. Ed. 2d at 462 (citations omitted).

The final two factors under the *Kennedy* analysis require us to decide whether there is a remedial purpose behind N.C.G.S. § 20-16.5, and if so, whether the statute is excessive in relation to the remedial purpose. Defendant concedes that there is a remedial purpose behind the sanctions imposed by N.C.G.S. § 20-16.5, that is, removing impaired drivers from the highway while they are a risk to themselves and others. However, defendant argues that the sanction imposed is excessive in relation to the remedial purpose. We disagree.

As we have stated, N.C.G.S. § 20-16.5 serves the important purpose of protecting the public from impaired drivers. "The carnage caused by drunk drivers is well documented and needs no detailed recitation here." *South Dakota v. Neville*, 459 U.S. 553, 558, 74 L. Ed. 2d 748, 755 (1983). However, we are also mindful of the burdens N.C.G.S. § 20-16.5 places on defendant, burdens which may vary depending upon a defendant's economic status. Nonetheless, given the gravity of the State's interest in protecting the public from impaired drivers, we conclude that the sanctions imposed by N.C.G.S. § 20-16.5 are not excessive in relation to the remedial purpose.

Having examined N.C.G.S. § 20-16.5 in light of the two-part analysis established by *Hudson*, we reject defendant's argument that *Hudson* requires a conclusion that the driver's license revocation found in N.C.G.S. § 20-16.5 constitutes punishment for purposes of double jeopardy analysis under both the Double Jeopardy Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution. Because we conclude that N.C.G.S. § 20-16.5 is neither punitive in purpose nor effect, we need not reach

defendant's remaining assignments of error in which he argues that the limited driving privilege provided for in N.C.G.S. § 20-16.5(p) does not negate the punitive nature of the statute because N.C.G.S. § 20-16.5 violates the United States and North Carolina Constitutions. Accordingly, we agree with the State that the trial court erred when it granted defendant's motion to dismiss. We reverse the 12 July 1999 order and remand for trial.

Reversed and remanded.

Judges WYNN and TIMMONS-GOODSON concur.