STATE OF NORTH CAROLINA v. CHRISTIAN LEE STRECKFUSS

No. COA04-609

(Filed 21 June 2005)

**1. Motor Vehicles— driving while impaired—motion to dismiss—sufficiency of evidence—double jeopardy**

The trial court did not violate defendant's right against double jeopardy by denying his motion to dismiss the charge of driving while impaired even though the State confiscated and retained his South Dakota driver's license when defendant refused to take an Intoxilyzer test and imposed a $50 fee, because: (1) contrary to defendant's argument, nothing in N.C.G.S. § 20-16.5 indicates that the purpose underlying the statute is different for out-of-state drivers than it is for North Carolina drivers when the threat posed to the citizens of North Carolina by an impaired driver driving on North Carolina highways is the same regardless of what state's license the driver has; (2) it is clear from the plain language of N.C.G.S. § 20-16.5 that it applies equally to a driver who has a North Carolina driver's license and to a driver who has a license from another state; (3) defendant does not argue, and nothing in the record indicates, that defendant was actually deprived of the ability to drive in the State of South Dakota for thirty days, and nothing in the record suggests that defendant could not have applied for or obtained a duplicate license or otherwise sought relief in South Dakota; (4) the State provides statutory remedies for a driver to secure his revoked license, which mitigate any possible punitive effects of the State's confiscation of a nonresident's license; and (5) the $50 fee is not a fine, but rather a minimal administrative fee that covers the costs for the action.

**2. Criminal Law— motion to dismiss—double jeopardy—time of motion—denial as harmless error**

The trial court's error of dismissing as untimely defendant's motion to dismiss a driving while impaired charge on the ground of double jeopardy did not prejudice defendant when the trial court correctly ruled on the substantive issue of double jeopardy.

STATE v. STRECKFUSS

[171 N.C. App. 81 (2005)]

**3. Criminal Law— prejudice analysis—no double jeopardy violation**

The trial court did not err by applying a prejudice analysis in denying defendant's motion to dismiss a driving while impaired charge on the ground of double jeopardy, because dismissal was not mandatory when the trial court properly concluded that defendant was not placed in prior jeopardy for the offense.

**4. Evidence— lay testimony—field sobriety tests**

The trial court did not err in a driving while impaired case by allowing a deputy to testify regarding the field sobriety tests over defendant's objection even though the State failed to establish both that the deputy was qualified to properly administer or interpret the tests and that the tests had been properly administered, because the testimony was relevant to the deputy's lay testimony that defendant was impaired.

Appeal by defendant from judgment entered 30 September 2003 and order entered 30 October 2003 by Judge Wade Barber in Superior Court, Wake County. Heard in the Court of Appeals 2 February 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Patricia A. Duffy, for the State.*

*George B. Currin for defendant-appellant.*

McGEE, Judge.

Deputy Joel B. Goodwin (Deputy Goodwin) of the Wake County Sheriff's Office was on patrol on 15 March 2002 traveling southbound on Capital Boulevard, at approximately 1:00 a.m., when he saw Christian Lee Streckfuss (defendant) turn onto northbound Capital Boulevard. Deputy Goodwin made a u-turn and followed defendant's vehicle, which was traveling approximately seventy-five m.p.h. in a fifty-five m.p.h. zone. He also observed that defendant was unable to maintain a steady, straight line in his lane of traffic. Deputy Goodwin pulled defendant over to the side of the road.

When Deputy Goodwin approached defendant's vehicle, defendant rolled down his window and Deputy Goodwin smelled a "strong odor of alcoholic beverage emanating from the vehicle." Defendant produced a South Dakota driver's license and a North Carolina registration for the rental vehicle defendant was driving. Defendant admitted to having had "a couple of drinks." Deputy Goodwin

observed that defendant's "eyes were kind of red and glassy and his speech was slightly slurred." Deputy Goodwin administered field sobriety tests to defendant. After defendant failed three attempts to stand on one foot, Deputy Goodwin formed the opinion that defendant's mental and physical capacities were impaired. Deputy Goodwin arrested defendant.

Chemical Analyst Jackie Oliver (Oliver) read defendant his rights prior to administering the Intoxilyzer test and gave defendant an opportunity to call an attorney, which defendant declined. Defendant refused to take the Intoxilyzer test. Oliver noted that defendant's eyes were "red kind of glassy" and that defendant smelled like alcohol.

Deputy Goodwin seized defendant's South Dakota driver's license pursuant to N.C. Gen. Stat. § 20-16.5(b). Defendant's license was held by the State of North Carolina for thirty days and was not released until defendant paid the required $50.00 fee.

At a pre-trial hearing, defendant pled guilty to speeding, but moved to dismiss the driving while impaired (DWI) charge on double jeopardy grounds. In an order entered 30 October 2003, the trial court dismissed defendant's motion as being untimely filed. However, the trial court also ruled on the merits of the motion, concluding that the confiscation of defendant's South Dakota license did not "place Defendant in prior jeopardy for the offense."

At trial, defendant was convicted of driving while impaired. He received a sixty-day suspended sentence and was ordered to pay a fine of $713.00. Defendant appeals.

I.

[1] Defendant first argues that the trial court erred in denying his motion to dismiss the DWI charge against him. Defendant argues that criminal prosecution and punishment of defendant for driving while impaired were barred because the State's confiscation and retention of his South Dakota driver's license and imposition of a $50.00 fee constituted punishment for double jeopardy purposes.

Defendant's license was seized pursuant to N.C. Gen. Stat. § 20-16.5 (b) when he refused to submit to the chemical analysis of an intoxilyzer test. Defendant concedes that our Courts have previously held that N.C.G.S. § 20-16.5 is remedial in nature, and that it does not constitute punishment for double jeopardy purposes. *See State v. Evans*, 145 N.C. App. 324, 334, 550 S.E.2d 853, 860 (2001); *see also State v. Oliver*, 343 N.C. 202, 209-10, 470 S.E.2d 16, 21 (1996).

However, defendant argues that these prior decisions are inapplicable to him because his license was an out-of-state license. Defendant asserts that our Courts' decisions that the statute's provisions do not constitute punishment for double jeopardy purposes are premised on the recognition that the civil revocation serves a lawful remedial purpose that outweighs its punitive effects. *See Evans*, 145 N.C. App. at 334-35, 550 S.E.2d at 860. Defendant contends that because he was a nonresident driver, the confiscation of his out-of-state license punished him by depriving him of the ability to drive in the State of South Dakota for thirty days, and thus the punitive effects of the revocation outweigh the remedial purpose. We disagree.

In *Evans*, our Court thoroughly analyzed N.C.G.S. § 20-16.5 to determine whether the statute, as amended in 1997, violated the Double Jeopardy clause of the United States Constitution or the Law of the Land clause of the North Carolina Constitution. *Id.* at 331-34, 550 S.E.2d at 858-60. We noted that "because N.C.G.S. § 20-16.5, as enacted, reflects an intent by the legislature for the revocation provision to be a remedial measure, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Evans*, 145 N.C. App. at 332, 550 S.E.2d at 859 (internal quotes and citations omitted). We reiterated that the statute has a legitimate remedial purpose, which "is to remove from our highways drivers who either cannot or will not operate a motor vehicle safely and soberly" and "to prevent unsafe and unfit drivers from operating vehicles and endangering the citizens of North Carolina." *Id.* at 331-32, 550 S.E.2d at 859. Finally, we concluded that the statute does not subject a person to double jeopardy because the statute "is neither punitive in purpose nor effect[.]" *Id.* at 334, 550 S.E.2d at 860.

Contrary to defendant's argument, nothing in our analysis of N.C.G.S. § 20-16.5 indicates that the purpose underlying the statute is different for out-of-state drivers than it is for North Carolina drivers. Certainly, the threat posed to the citizens of North Carolina by an impaired driver driving on North Carolina highways is the same regardless of what state's license the driver has. Furthermore, it is clear from the plain language of N.C.G.S. § 20-16.5, and related statutes, that N.C.G.S. § 20-16.5 applies equally to a driver who has a North Carolina driver's license and to a driver who has a license from another state.

First, related statute N.C. Gen. Stat. § 20-22 provides that driver's licenses of out-of-state drivers "shall be subject to suspension or

revocation by the Division [of Motor Vehicles] in like manner and for like cause as a driver's license issued [in North Carolina] may be suspended or revoked." N.C. Gen. Stat. § 20-22(a) (2003). Therefore, the revocation of a license pursuant to N.C.G.S. § 20-16.5 for failure to submit to chemical analysis applies to nonresident drivers.

Second, the plain language of N.C.G.S. § 20-16.5 demonstrates that the General Assembly intended for the statute to apply equally to drivers from other states, as well as to those from North Carolina. *See Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) ("Legislative purpose is first ascertained from the plain words of the statute."). The statute applies to *any* person "who operates a motor vehicle upon the highways of the State[,]" *State v. Allen*, 14 N.C. App. 485, 489, 188 S.E.2d 568, 571 (1972), and is charged with an implied consent offense, such as impaired driving. N.C. Gen. Stat. § 20-16.5(b)(1)-(3) (2003) (referring to N.C. Gen. Stat. § 20-16.2). Such a person "is deemed to have given consent to a breathalyzer test." *Allen*, 14 N.C. App. at 489, 188 S.E.2d at 571. If the person "[w]illfully refuses to submit to the chemical analysis[,]" the person's driver's license is subject to revocation for thirty days, assuming the other provisions of N.C.G.S. § 20-16.5(b) are met. N.C.G.S. § 20-16.5(b).

Third, N.C.G.S. § 20-16.5 expressly applies to licenses issued in states other than North Carolina. The statute defines "Surrender of a Driver's License" as "[t]he act of turning over to a court or a law-enforcement officer the person's most recent, valid driver's license . . . issued by the Division [of Motor Vehicles] *or by a similar agency in another jurisdiction*[.]" N.C. Gen. Stat. § 20-16.5(a)(5) (2003) (emphasis added). Additionally, when N.C. Gen. Stat. § 20-16.2 is read together with N.C.G.S. § 20-16.5, it is clear that the immediate civil license revocation for persons charged with implied-consent offenses in N.C.G.S. § 20-16.5 applies to persons with out-of-state licenses. N.C.G.S. § 20-16.2 includes a provision requiring the North Carolina Division of Motor Vehicles to notify "the motor vehicle administrator of the state of the person's residence and of any state in which the person has a license" of the revocation when a nonresident's privilege to drive in the State has been revoked. N.C. Gen. Stat. § 20-16.2(f) (2003). Defendant's argument that the statute does not have a remedial purpose as applied to drivers with out-of-state licenses is without merit.

Similarly, we are not persuaded by defendant's contention that the punitive effects of N.C.G.S. § 20-16.5, as applied to a nonresident,

outweigh the lawful remedial purpose discussed above. Defendant asserts that N.C.G.S. § 20-16.5 serves only to punish him by depriving him of the ability to drive in the State of South Dakota for thirty days. Defendant's argument is centered on the premise that the State of North Carolina does not have authority to restrict or interfere with defendant's ability to drive in his home state. *See Hendrick v. Maryland*, 235 U.S. 610, 622, 59 L. Ed. 385, 391 (1915) (stating that it is within the police power of a state to "prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles[,]" including licensing their drivers). However, that the State of North Carolina might have improperly seized defendant's driver's license does not mean that the revocation amounts to punishment.

Defendant does not argue, and nothing in the record indicates, that defendant was actually deprived of the ability to drive in the State of South Dakota for thirty days. Neither is there evidence in the record showing when or whether defendant returned to South Dakota. Nor does defendant demonstrate that he was denied the privilege of driving in South Dakota. "The license is merely physical evidence of the existence of the privilege to drive in the state wherein [the license] was issued." Opinion of Attorney General Robert Morgan, 40 N.C. Op. Att. Gen. 420, 422 (1969). Nothing in the record suggests that defendant could not have applied for or obtained a duplicate license or otherwise sought relief in South Dakota. Defendant was merely denied the physical evidence of the privilege to drive in his home state, his driver's license, which does not constitute punishment.

Additionally, the State provides statutory remedies for a driver to secure his revoked license, which mitigate any possible punitive effects of the State's confiscation of a nonresident's driver's license. N.C.G.S. § 20-16.5(g) provides that a person may contest the validity of a revocation in a hearing before a magistrate or district court judge, either of whom may rescind the revocation. N.C.G.S. § 20-16.5(g). The request for such a hearing "may be made at the time of the person's initial appearance, or within 10 days of the effective date of revocation" and "the hearing must be held within three working days following the request if the hearing is before a magistrate or within five working days if the hearing is before a district court judge." *Id.* In addition to contesting the validity of the revocation, defendant could have sought a limited driving privilege under N.C.G.S. § 20-16.5(p).

Whether or not the State should have required defendant to surrender his South Dakota driver's license, *see* Opinion of Attorney General Robert Morgan, 40 N.C. Op. Att. Gen. at 422 ("To require the surrender of a valid driver's license issued by another state would be an empty gesture since the North Carolina court cannot determine the status of a nonresident's privilege to drive in his home state."), the State's seizure of defendant's South Dakota license was not punishment. The only harm evident in the record is that defendant had to pay $50.00 to restore his privilege to drive in North Carolina after the thirty-day revocation period expired. Defendant does not argue, and we do not see, how this fee constituted punishment. The $50.00 charge is not a fine, but rather a minimal administrative fee that covers the "costs for the action[.]" N.C.G.S. § 20-16.5(j). Thus, defendant fails to offer proof sufficient to "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *See Evans*, 145 N.C. App. at 332, 550 S.E.2d at 859. The trial court correctly concluded that defendant was not placed in prior jeopardy for driving while impaired, and we thereby affirm the trial court's denial of defendant's motion to dismiss on double jeopardy grounds.

## II.

[2] Defendant next argues that the trial court erred in dismissing defendant's motion to dismiss as being untimely filed. We agree. A motion to dismiss on the grounds of double jeopardy may be made at any time. N.C. Gen. Stat. § 15A-954(c) (2003). However, the trial court correctly ruled on the substantive issue of double jeopardy and its error in dismissing defendant's motion to dismiss as being untimely did not prejudice defendant.

## III.

[3] Defendant's third assignment of error is that the trial court erred in applying a prejudice analysis in denying defendant's motion to dismiss for double jeopardy. Specifically, defendant argues that the trial court erred when it concluded that "[t]he unlawful actions of the State in seizing the license was not such a flagrant violation of Defendant's constitutional rights resulting in such irreparable prejudice that there is no remedy but to dismiss the prosecution." Defendant asserts that dismissal is mandatory under N.C.G.S. § 15A-954 when the trial court concludes that a defendant has already been placed in jeopardy for the same offense, and thus engaging in a prejudice analysis was misplaced. *See* N.C. Gen. Stat. § 15A-954(a)(5) (2003). However, as discussed above, the trial

court properly concluded that defendant was not placed in prior jeopardy for the offense. Thus, dismissal was not mandatory, and defendant's argument to the contrary is overruled.

IV.

**[4]** Finally, defendant assigns as error the trial court's allowing Deputy Goodwin to testify regarding the field sobriety tests over defendant's objection. Defendant argues that the trial court erred in allowing Deputy Goodwin to testify about the field sobriety tests when the State had failed to establish both that Deputy Goodwin was qualified to properly administer or interpret the field sobriety tests, and that the tests had been properly administered. However, we conclude that there was no error in admitting this evidence because it was relevant to Deputy Goodwin's lay testimony that defendant was impaired.

Relevant evidence is admissible, except as specifically provided by law. N.C. Gen. Stat. § 8C-1, Rule 402 (2003). "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue. In criminal cases, every circumstance that is calculated to throw any light upon the supposed crime is admissible. The weight of such evidence is for the jury." *State v. Smith*, 357 N.C. 604, 613-14, 588 S.E.2d 453, 460 (2003) (internal quotes and citations omitted), *cert. denied*, —— U.S. ——, 159 L. Ed. 2d 819 (2004). A trial court must determine if the proposed evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2003). "[A] trial court's rulings on relevancy . . . are not discretionary and therefore are not reviewed under the abuse of discretion standard[.]" *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398 (1992). Nevertheless, "such rulings are given great deference on appeal." *Id.*

At trial, the trial court allowed defendant to conduct a voir dire hearing outside the jury's presence to assess Deputy Goodwin's training and qualifications in administering field sobriety tests. Following the voir dire, the trial court concluded:

> [Deputy Goodwin] cannot testify that he administered standardized field sobriety tests. The officer may testify what he asked the defendant to do and what the defendant did in response thereto. The defense is free to cross-examine [Deputy Goodwin] at will with regard to that testimony, and if the defense chooses, may

cross-examine him with regard to the standardized test, so forth as you choose.

The trial court stated that Deputy Goodwin could not testify that he believed defendant to be impaired because defendant failed the tests; however, he could testify that he formed an opinion that defendant was impaired when Deputy Goodwin asked defendant to stand on one leg and defendant started to hop and then fell over. In other words, Deputy Goodwin was permitted to testify as a lay witness, rather than as an expert.

"[A] lay person may give his opinion as to whether a person is intoxicated so long as that opinion is based on the witness's personal observation." *State v. Rich*, 351 N.C. 386, 398, 527 S.E.2d 299, 306 (2000) (citing *State v. Lindley*, 286 N.C. 255, 258, 210 S.E.2d 207, 209 (1974)). In the present case, Deputy Goodwin only testified that, based on his personal observations, he formed an opinion that defendant was impaired. Evidence that defendant was impaired is relevant to the issue of whether defendant was driving while impaired. Therefore, the trial court did not err in admitting Deputy Goodwin's testimony about defendant's field sobriety tests.

No error.

Judges TYSON and GEER concur.