STATE OF NORTH CAROLINA v. ROBERT COLTER HINCHMAN

No. COA07-1549

(Filed 16 September 2008)

**1. Appeal and Error— DWI appeal—driver's license revocation—not contested by statutory means**

A driver's license revocation was beyond the scope of a criminal appeal where defendant did not contest the validity of the revocation order through the means prescribed by statute. N.C.G.S. § 20-16.5(c) and (g).

**2. Courts— dismissal in district court—appeal to superior court—legal basis specified**

There was no merit in a DWI prosecution to defendant's argument that the State failed to specify the legal basis of the motion to appeal from district to superior court. N.C.G.S. § 15A-1432(b).

**3. Courts— appeal from district to superior court—caption in motion**

Defendant did not show prejudice from an incorrect listing of the court division in the caption of a motion to appeal a DWI dismissal in the district court to the superior court, even assuming that the caption was incorrect.

**4. Witnesses— qualification of person drawing blood—testimony of highway patrol trooper—sufficiency**

A highway patrol trooper's testimony in a DWI prosecution that the person who drew defendant's blood worked in a hospital blood laboratory was sufficient to show that the person was qualified under N.C.G.S. § 20-139.1(c).

**5. Appeal and Error— preservation of issues—assignment of error—argument and citation of authority—requirements**

The question of whether a lab tech's absence at trial violated defendant's right to confrontation was beyond the scope of the review where defendant did not assign error to the issue. Moreover, defendant's argument that a trooper's testimony about a lab tech's qualifications was hearsay was not supported by argument or citation of authority.

STATE v. HINCHMAN

[192 N.C. App. 657 (2008)]

**6. Constitutional Law— right to confrontation—laboratory report and chemical analyst's permit—nontestimonial**

A laboratory report and a chemical analyst's permit in a DWI prosecution were nontestimonial. The lab report was limited to chain of custody and blood alcohol concentration, and the permit to perform blood chemical analysis was neutral evidence created to serve a number of purposes other than evidence at trial.

**7. Constitutional Law— double jeopardy—driver's license revocation after DWI arrest—civil penalty**

A driver's license revocation after a DWI arrest was a civil remedy and did not violate double jeopardy even though defendant argued that the time between arrest and revocation did not serve the intended purpose of the revocation statute.

Appeal by defendant from judgment entered 27 July 2007 by Judge Thomas D. Haigwood in Pitt County Superior Court. Heard in the Court of Appeals 18 August 2008.

*Roy Cooper, Attorney General, by Isaac T. Avery, III, Special Counsel, for the State.*

*The Robinson Law Firm, P.A., by Leslie S. Robinson, for defendant-appellant.*

MARTIN, Chief Judge.

Robert Colter Hinchman ("defendant") was charged with driving while impaired ("DWI"), driving after consuming alcohol by a person under age twenty-one, and reckless driving. Defendant was convicted by a jury of DWI and was sentenced to sixty days' imprisonment, suspended for a period of twelve months subject to terms of probation. Defendant appeals from his conviction and sentence.

The evidence at trial tended to show that on 23 June 2004 defendant, who was then under the age of twenty-one, and some of his friends had been drinking alcohol at defendant's parents' house before setting out in defendant's vehicle. While driving, defendant lost control of the vehicle, which struck a guardrail and overturned. Within minutes, Trooper William Brown arrived at the scene. Defendant identified himself as the driver of the car and stated that he was unhurt. Trooper Brown detected an odor of alcohol on defendant's breath, noticing also that his eyes were red and glassy and that he appeared to be under the age of twenty-one. After asking defend-

STATE v. HINCHMAN

[192 N.C. App. 657 (2008)]

ant to take a seat in his patrol car, Trooper Brown administered an Alco-sensor to defendant to establish probable cause that defendant had been drinking. Based upon his observations, Trooper Brown opined that defendant was appreciably impaired by some substance. Trooper Brown then arrested and charged defendant with DWI in violation of N.C.G.S. § 20-138.1, driving after consuming by a person under age twenty-one in violation of N.C.G.S. § 20-138.3, and reckless driving in violation of N.C.G.S. § 20-140.

Trooper Brown possessed a permit, issued by the North Carolina Department of Health and Human Services ("DHHS"), allowing him to administer chemical analyses of the blood, and he transported defendant to Pitt County Memorial Hospital (the "hospital") to obtain a blood sample. Trooper Brown read defendant his implied consent rights twice because defendant had difficulty comprehending them the first time. Defendant was allowed up to thirty minutes to contact an attorney or witness to view the testing procedures, but he was unable to reach an attorney. Defendant then submitted to the blood test. June Anderson, who worked in the blood laboratory at the hospital, withdrew defendant's blood sample, and Trooper Brown submitted it to the State Bureau of Investigations ("SBI") for chemical analysis. SBI chemical analyst Richard Waggoner, who held a permit, issued by DHHS, to perform chemical analyses of blood, later analyzed the blood sample and completed a laboratory report on 30 August 2004 indicating a blood alcohol concentration of 0.10.

On 16 September 2004, the laboratory report was served on defendant. Trooper Brown filed an affidavit and revocation report with the district court on 2 November 2004. The district court entered a revocation order on 5 November 2004 in defendant's absence, ordering him to surrender his driver's license and revoking his license for a minimum of thirty days, pursuant to N.C.G.S. § 20-16.5. Defendant surrendered his license on 10 November 2004.

On 18 November 2004, defendant filed a motion to dismiss the criminal charge of driving while impaired, arguing that the revocation of his license constituted criminal punishment and that further prosecution would subject him to double jeopardy. On 11 April 2005, the district court granted defendant's motion and later entered a written order dismissing all charges, upon a finding:

[T]he revocation of Defendant's drivers license, approximately 140 days after the date of offense, does not constitute the necessary prompt legal action to remove Defendant from the high-

STATE v. HINCHMAN

[192 N.C. App. 657 (2008)]

ways of North Carolina in order to protect the public and therefore, is a punishment which prohibits further prosecution of the Defendant for these charges which would subject him to double jeopardy.

On 19 April 2005, the State appealed the order to superior court, pursuant to N.C.G.S. § 15A-1432. Defendant moved to dismiss the State's appeal on 30 September 2005. The same day, the superior court heard the appeal, vacated the order which had dismissed the charges, and remanded the case to the district court for disposition. Defendant submitted a proposed order seeking an interlocutory appeal, but the court instead entered an order finding that the issues were not appropriately justiciable and that such an appeal would be for the purpose of delay.

On 25 January 2007, the district court found defendant guilty of DWI. He was sentenced at the minimum Level 5 to sixty days' imprisonment suspended for twelve months subject to defendant's completion of twenty-four hours of community service, payment of fine and court costs, and compliance with the other regular conditions of probation. Defendant appealed to superior court.

On 2 April 2007, defendant again filed a motion to dismiss based upon double jeopardy. The superior court denied the motion to dismiss, concluding that its previous order was the law of the case and the circumstances of defendant's case did not constitute double jeopardy.

On 26 and 27 July 2007, defendant was tried before a jury for DWI. The jury found defendant guilty, and the superior court imposed the same sentence as the district court had imposed. The defendant appealed his conviction and sentence to this Court.

[1] Defendant first argues that the revocation report was not properly executed and was not "expeditiously filed" with the court, as required by N.C.G.S. § 20-16.5(c), because it was filed on 2 November 2004, 132 days after his arrest on 23 June 2004. In light of these errors, defendant argues, the trial court erred in entering the revocation order.

The statute that was applicable at the time defendant was charged states:

If a person's driver's license is subject to revocation under this section, the charging officer and the chemical analyst must exe-

cute a revocation report. . . . It is the specific duty of the charging officer to make sure that the report is expeditiously filed with a judicial official as required by this section.

N.C. Gen. Stat. § 20-16.5(c) (2005). This section also provides: "A person whose license is revoked under this section may request in writing a hearing to contest the validity of the revocation. The request may be made at the time of the person's initial appearance, or within 10 days of the effective date of the revocation . . . ." N.C. Gen. Stat. § 20-16.5(g).

Defendant did not contest the validity of the revocation order through the means prescribed in the statute. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion . . . ." N.C.R. App. P. 10(b)(1) (2008). Since defendant did not request a hearing to challenge the validity of the civil revocation order, the issue is not properly preserved and is outside the scope of our review in his criminal appeal.

**[2]** Next, defendant argues the trial court erred in denying his motion to dismiss the State's motion to appeal because the State's motion (1) was filed in the wrong division of the court and (2) failed to specify the legal basis of its appeal, as required by N.C.G.S. § 15A-1432. The applicable statute states:

(a) Unless the rule against double jeopardy prohibits further prosecution, the State may appeal from the district court judge *to the superior court*:

(1) When there has been a decision or judgment dismissing criminal charges as to one or more counts.

. . . .

(b) When the State appeals pursuant to subsection (a) the appeal is by written motion *specifying the basis of the appeal* made within 10 days after the entry of the judgment in the district court. The motion must be filed with the clerk and a copy served upon the defendant.

N.C. Gen. Stat. § 15A-1432(a)-(b) (2007) (emphasis added).

First, we conclude that defendant's argument that the motion to appeal failed to specify the legal basis of appeal is clearly without merit. The State's motion to appeal plainly asserted "no competent

evidence was presented to support the motion and order to dismiss" and the "[d]ismissal of the charges was contrary to law." This Court has found that the State properly stated the basis of appeal where the basis was stated in similar detail. *State v. Ward*, 127 N.C. App. 115, 117, 120-21, 487 S.E.2d 798, 800, 802 (1997) (holding that the State properly made a motion to appeal where it alleged that no written findings of fact supported the trial court's decision and the reasons for dismissal of the charges were "not legally proper reasons for dismissal of criminal charges without a finding of fact"). Accordingly, defendant's assignment of error on this point is overruled.

**[3]** Defendant also argues that the State's motion to appeal is captioned as having been filed in the district court division, while N.C.G.S. § 15A-1432 provides that "the State may appeal . . . to the *superior court*." N.C. Gen. Stat. § 15A-1432(a) (emphasis added). Defendant argues, therefore, that the superior court lacked jurisdiction to hear the motion and that its subsequent entry of the order vacating the district court's dismissal of the charges was error.

Even assuming the caption to have been incorrect, defendant has shown no prejudice. *See Ward*, 127 N.C. App. at 120-21, 487 S.E.2d at 802 (superior court did not lose jurisdiction to hear appeal where the State deviated from the technical requirements of N.C.G.S. § 15A-1432 by captioning the appeal "Notice of Appeal" rather than "Motion to Appeal"). Therefore, we overrule this assignment of error.

**[4]** Next, defendant contends that the trial court erred in admitting certain evidence related to the chemical analysis of his blood. First, defendant argues that the trial court erred in admitting the chemical analysis because the State failed to show that the person who withdrew the blood, June Anderson, was a qualified person as defined in N.C.G.S. § 20-139.1(c). The applicable statute states: "When a blood test is specified as the type of chemical analysis by the charging officer, only a physician, registered nurse, or other qualified person may withdraw the blood sample." N.C. Gen. Stat. § 20-139.1(c) (2005). Defendant argues that because Ms. Anderson did not testify as to her own qualifications the State could not establish that she was a "qualified person." This argument ignores the governing statute and decisions of this Court. N.C.G.S. § 20-139.1(c) specifically provides: "Evidence regarding the qualifications of the person who withdrew the blood sample may be provided at trial by testimony of the charging officer or by an affidavit of the person who withdrew the blood sample and shall be sufficient to constitute prima facie evidence

regarding the person's qualifications." This Court has held that where a law enforcement officer "testified that the sample was drawn by a blood technician at [the h]ospital[, t]his is evidence that the sample was drawn by a qualified person." *State v. Watts*, 72 N.C. App. 661, 664, 325 S.E.2d 505, 507, *disc. review denied*, 313 N.C. 611, 332 S.E.2d 83 (1985). Furthermore, where "the only evidence before the trial court was that a nurse was present to withdraw the blood[, and t]here was no evidence to support the trial court's finding to the contrary," this Court held the State carried its burden of proof to show compliance with N.C.G.S. § 20-139.1(c). *Richardson v. Hiatt*, 95 N.C. App. 196, 199-200, 381 S.E.2d 866, 868, *reh'g granted and modified on other grounds*, 95 N.C. App. 780, 384 S.E.2d 62 (1989).

In the case before us, Trooper Brown testified:

Q. And the person who drew the blood samples, Ms. Anderson, where did you get this person from?

A. The blood lab at the hospital.

Q. And . . . what did you see this person doing?

A. She was working in the blood lab and had on a lab tech I uniform—

. . . .

A. —which was pink pants and a white shirt and her name tag, and I observed her draw the blood.

Q. And this particular area where Ms. Anderson was working, is that an area that everyone would just have access to?

A. No, ma'am.

Here, Trooper Brown's testimony that Ms. Anderson worked at the blood laboratory at the hospital was sufficient to show that she was a qualified person under N.C.G.S. § 20-139.1(c).

[5] Defendant further suggests Ms. Anderson's absence at trial "denied defendant his rights of confrontation and cross examination." Defendant did not assign this issue as error; thus, it is outside the scope of our review. N.C.R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ."). Defendant's further allegation that Trooper Brown's testimony about Ms. Anderson's qualifications was hearsay is unsupported by argument or cited

authority in the brief; therefore, we take it as abandoned. N.C.R. App. P. 28(b)(6) (2008).

**[6]** Defendant also argues that the trial court erred in admitting the laboratory report and the chemical analyst's permit because they were inadmissible testimonial evidence under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). However, this Court has held that the affidavit of a chemical analyst is nontestimonial evidence under *Crawford* when the "affidavit [i]s limited to his objective analysis of the evidence and routine chain of custody information." *State v. Heinricy*, 183 N.C. App. 585, 591, 645 S.E.2d 147, 151, *disc. review denied*, 362 N.C. 90, 656 S.E.2d 593 (2007). As in *Heinricy*, the laboratory report in the present case was limited to chain of custody information and the chemical analyst's affidavit that the blood alcohol concentration in the sample was found to be "0.10 grams of alcohol per 100 milliliters of whole blood" upon analysis of the sample "in accordance with methods approved by the Commission for Health Services." Because the results of the chemical analysis were admissible as part of the laboratory report, we need not consider defendant's further argument that the trial court should have sustained defendant's objection to SBI Agent Aaron Joncich's testimony of defendant's blood alcohol concentration, where he simply read the information from the report.

Seemingly as an afterthought, defendant states: "For these same reasons, Mr. Waggoner's permit should not have been admitted by and through Agent Joncich." Assuming that defendant purports to characterize Mr. Waggoner's permit as testimonial evidence inadmissible pursuant to *Crawford*, this argument is without merit. As our Supreme Court has noted:

> [T]he [United States] Supreme Court in *Crawford* indicated in dicta that business records are not testimonial. [*Crawford*, 541 U.S.] at 56, 158 L. Ed. 2d at 195-96 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."). The distinction between business records and testimonial evidence is readily seen. Among other attributes, business records are neutral, are created to serve a number of purposes important to the creating organization, and are not inherently subject to manipulation or abuse.

*State v. Forte*, 360 N.C. 427, 435, 629 S.E.2d 137, 143, *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 413 (2006). Clearly, Mr. Waggoner's permit to

perform chemical analyses of blood issued by the DHHS was neutral evidence and was created to serve a number of purposes other than to be used as evidence at trial, and it is not the type of testimonial evidence described in *Crawford*.

**[7]** Lastly, defendant argues that his driver's license revocation under N.C.G.S. § 20-16.5 constituted criminal punishment, and therefore, his later conviction of DWI violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution. This Court has already addressed the issue of whether license revocation constitutes a civil remedy or a criminal punishment. In *State v. Evans*, 145 N.C. App. 324, 334, 550 S.E.2d 853, 860 (2001), this Court held:

> Having examined N.C.G.S. § 20-16.5 in light of the two-part analysis established by *Hudson*, we reject defendant's argument that *Hudson* requires a conclusion that the driver's license revocation found in N.C.G.S. § 20-16.5 constitutes punishment for purposes of double jeopardy analysis under both the Double Jeopardy Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution.

Defendant argues that the rationale applied by this Court in *Evans* is inapplicable under the circumstances of his particular case because the delay of 135 days between his arrest and the license revocation did not serve the intended purposes of the statute. Nevertheless, we find dispositive additional language from *Hudson v. United States*, 522 U.S. 93, 139 L. Ed. 2d 450 (1997), overruling its earlier decision in *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487 (1989). The *Halper* Court stated: "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction *as applied in the individual case* serves the goals of punishment." *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 501 (emphasis added). In abrogation of this statement, the *Hudson* Court held:

> The analysis applied by the *Halper* Court deviated from our traditional double jeopardy doctrine in two key respects. . . . The second significant departure in *Halper* was the Court's decision to "asses[s] the character of the actual sanctions imposed," 490 U.S., at 447, rather than, as *Kennedy* demanded, evaluating the "statute on its face" to determine whether it provided for what amounted to a criminal sanction, 372 U.S., at 169.

> We believe that *Halper's* deviation from longstanding double jeopardy principles was ill considered. As subsequent cases have

demonstrated, *Halper's* test for determining whether a particular sanction is "punitive," and thus subject to the strictures of the Double Jeopardy Clause, has proved unworkable. . . . Under *Halper's* method of analysis, a court must also look at the "sanction actually imposed" to determine whether the Double Jeopardy Clause is implicated. Thus, it will not be possible to determine whether the Double Jeopardy Clause is violated until a defendant has proceeded through a trial to judgment. But in those cases where the civil proceeding follows the criminal proceeding, this approach flies in the face of the notion that the Double Jeopardy Clause forbids the government from even *"attempting* a second time to punish criminally." *Helvering*, 303 U.S., at 399 (emphasis added).

*Hudson*, 522 U.S. at 101-02, 139 L. Ed. 2d at 460-61 (alteration in original) (footnote omitted). Accordingly, the characterization of a sanction as either civil or criminal is determined on the face of the statute and is not determined on an individual basis.

Although N.C.G.S. § 20-16.5 has been amended five times between the arrest at issue in *Evans*, which occurred in 1998, *Evans*, 145 N.C. App. at 325, 550 S.E.2d at 855, and defendant's arrest in this case, which occurred in 2004, the changes are minor and have little effect on the substance of the law. Defendant does not argue that any of the changes to the face of the statute transform the character of the sanction from civil to criminal, but rather, argues only that the length of time between his arrest and the license revocation counters the recognized principle behind the law that "[t]he safety of the impaired driver and other people using the state's highways depends upon *immediately* denying the impaired driver access to the public roads." *Henry v. Edmisten*, 315 N.C. 474, 494, 340 S.E.2d 720, 733 (1986) (emphasis added). In the absence of any argument that N.C.G.S. § 20-16.5 as written in 2004 differed in any material way from § 20-16.5 as written in 1998, we are not persuaded that this Court's reasoning in *Evans* should not be equally convincing in determining whether § 20-16.5 as amended in 2004 created a civil or criminal sanction. Accordingly, for the reasons stated in *Evans*, we conclude that defendant's license revocation in 2004 pursuant to N.C.G.S. § 20-16.5 was a civil remedy. Defendant's argument that his rights under the Double Jeopardy Clause of the United States Constitution were violated is overruled.

No error.

Judges WYNN and HUNTER concur.