STATE OF NORTH CAROLINA
v.
BOBBY LEE McKENZIE

No. COA12-436

Filed 15 January 2013

1. **Constitutional Law—double jeopardy—driving while impaired—commercial driver's license revocation**

    Defendant's prosecution for driving while impaired (DWI) subsequent to a commercial driver's license disqualification under N.C.G.S. § 20-17.4 constituted impermissible double jeopardy. Based on the factors in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, N.C.G.S. § 20-17.4 is so punitive that it becomes a criminal punishment and defendant cannot subsequently face prosecution for DWI.

2. **Constitutional Law—due process—mootness—no available remedy**

    Defendant's due process claim was moot because he had no available remedy. The subject of the claim was defendant's one-

year commercial driver's license (CDL) disqualification under N.C.G.S. § 20-17.4, the disqualification had terminated, nothing in the record indicated that defendant was currently disqualified from holding a CDL, and defendant did not contend that collateral legal consequences were expected.

Judge HUNTER, Robert C. dissenting

Appeal by defendant from order entered 13 March 2012 by Judge Phyllis M. Gorham in Duplin County Superior Court. Heard in the Court of Appeals 10 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Christopher W. Brooks, for the State.*

*Hunter & Price, P.A., by Justin B. Hunter and G. Braxton Price, for defendant-appellant.*

*Tin Fulton Walker & Owen, PLLC, by Noell P. Tin, Matthew G. Pruden, and Jacob H. Sussman, for North Carolina Advocates for Justice, amicus curiae.*

HUNTER, JR., Robert N., Judge.

Bobby McKenzie ("Defendant") appeals an order (i) reversing the District Court's order that dismissed his Driving While Impaired ("DWI") charge; (ii) reinstating his DWI charge; and (iii) remanding his case for trial. Defendant contends the trial court erred because (i) prosecution for DWI subjects him to double jeopardy; and (ii) disqualification of his commercial driver's license ("CDL") violated his substantive and procedural due process rights. Upon review, we reverse the trial court's decision.

## I. Facts & Procedural History

Defendant was a commercial truck driver for KBJ Logging ("KBJ") in Wallace. On 9 July 1996, Defendant applied for a Class A CDL under N.C. Gen. Stat. §§ 20-4.01(2a) and 20-4.01(3d). He successfully completed all tests required by the North Carolina Department of Motor Vehicles ("DMV"). The DMV issued Defendant a Class A CDL on 9 August 1996. Defendant renewed his CDL on 21 March 2000, 24 March 2005, and 24 March 2010. On 4 July 2010, Defendant had a valid Class A CDL.

STATE v. McKENZIE

[225 N.C. App. 208 (2013)]

In the early hours of 4 July 2010, Defendant was driving a non-commercial motor vehicle. At approximately 1:10 AM, Defendant submitted to a show of authority by Trooper D.M. Rich ("Rich") of the North Carolina State Highway Patrol. Rich arrested Defendant for (i) driving left of center (N.C. Gen. Stat. § 20-146 (2011)), and (ii) DWI (N.C. Gen. Stat. § 20-138.1 (2011)). At Rich's request, Defendant took two Intoxilyzer EC/IR-II breath tests at 2:37 AM and 2:40 AM. Both tests indicated Defendant had a blood alcohol concentration of 0.08 or higher.

Defendant appeared before Duplin County Magistrate Albert Alabaster ("Alabaster") later that night. Based on the breath test results, Alabaster issued a Revocation Order When Person Present (the "Revocation Order") pursuant to N.C. Gen. Stat. § 20-16.5.[1] He then seized Defendant's CDL. The Revocation Order "remain[ed] in effect at least thirty (30) days" from its issuance. According to the Revocation Order, Defendant could reclaim his license at the end of the thirty-day period if he paid a $100.00 civil revocation fee to the Duplin County Clerk of Superior Court. The Revocation Order also described Defendant's "right to a hearing to contest the validity of this Revocation before a magistrate or judge. To do so, a written request must be made within ten (10) days of the effective date of the revocation." Nothing in the record indicates Defendant contested the 30-day revocation.

On 20 July 2010, the DMV sent Defendant a letter informing him that, effective 4 July 2010, his CDL was disqualified for one year. The letter referenced N.C. Gen. Stat. § 20-17.4(a)(7), which states if an individual has "[a] civil license revocation under G.S. 20-16.5 . . . arising out of a charge that occurred . . . while the person was holding a commercial drivers license[,]" the individual is disqualified from driving a commercial vehicle for one year. The letter also said "[a] hearing is not authorized by statute."

On 5 August 2010, Defendant went to the Duplin County Clerk of Superior Court's Office, paid the civil revocation fee, and retrieved his Class A CDL. However, under N.C. Gen. Stat. § 20-17.4(a)(7) he was still disqualified from driving a commercial vehicle until 4 July 2011.

After his commercial driving disqualification, Defendant became a logger for KBJ instead of a truck driver. KBJ cut his pay in half.

---

1. N.C. Gen. Stat. § 20-16.5 states "a person's driver's license is subject to revocation under this section if . . . [th]e person has . . . [a]n alcohol concentration of 0.08 or more at any relevant time after driving." N.C. Gen. Stat. § 20-16.5(b1) (2011).

A few months later, KBJ fired Defendant because its logging crews were overstaffed.

On 25 August 2011, Defendant filed a motion to dismiss his DWI charge due to: (i) due process violations; (ii) double jeopardy violations; and (iii) equal protection violations. On 6 September 2011, the Duplin County District Court granted his motion based on: (i) due process violations; and (ii) double jeopardy violations. The State timely appealed to Duplin County Superior Court. On 13 March 2012, the Duplin County Superior Court entered an order (i) reversing the District Court's order; (ii) reinstating Defendant's DWI charge; and (iii) remanding the case to District Court for further proceedings. The Superior Court's order also certified that "an appeal of this Order is appropriately justiciable in the appellate division as an interlocutory matter" pursuant to N.C. Gen. Stat. § 15A-1432(d). Defendant filed timely notice of appeal on 19 March 2012.

## II.  Jurisdiction & Standard of Review

This Court has jurisdiction to hear the instant appeal pursuant to N.C. Gen. Stat. §§ 15A-1432(d) and 7A-27(d) (2011).

> If the superior court finds that a judgment, ruling, or order dismissing criminal charges in the district court was in error, . . . [t]he defendant may appeal this order to the appellate division . . . by an interlocutory appeal if the defendant, or his attorney, certifies to the superior court judge who entered the order that the appeal is not taken for the purpose of delay and if the judge finds the cause is appropriately justiciable in the appellate division as an interlocutory matter.

N.C. Gen. Stat. § 15A-1432(d) (2011). Although the present appeal is interlocutory, it is reviewable under N.C. Gen. Stat. § 7A-27(d) because it affects "substantial rights." *See State v. Major*, 84 N.C. App. 421, 422, 352 S.E.2d 862, 863 (1987) ("[A] defendant's right not to be unconstitutionally subjected to multiple criminal trials for the same offense is a substantial right."); *State v. Johnson*, 95 N.C. App. 757, 758, 383 S.E.2d 692, 693 (1989) (holding an interlocutory appeal in a criminal case is reviewable when it raises a due process claim).

"The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009), *appeal dismissed and disc. review denied*, 363 N.C. 857, 694 S.E.2d 766 (2010); *see also Piedmont Triad Reg'l Water*

*Auth. v. Sumner Hills Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) ("[D]e novo review is ordinarily appropriate in cases where constitutional rights are implicated."). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

"[A]s a general rule this Court will not hear an appeal when the subject matter of the litigation has been settled between the parties or has ceased to exist." *Kendrick v. Cain*, 272 N.C. 719, 722, 159 S.E.2d 33, 35 (1968).

> Before determining whether an appeal is moot when the defendant has completed his sentence, it is necessary to determine whether collateral legal consequences of an adverse nature may result. '[W]hen the terms of the judgment below have been fully carried out, if collateral legal consequences of an adverse nature can reasonably be expected to result therefrom, then the issue is not moot and the appeal has continued legal significance.'

*State v. Black*, 197 N.C. App. 373, 375-76, 677 S.E.2d 199, 201 (2009) (quoting *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977)) (alteration in original).

### III. Analysis

On appeal, Defendant makes two arguments: (i) the trial court erred because his DWI prosecution constitutes double jeopardy; and (ii) the trial court erred because his one-year CDL disqualification under N.C. Gen. Stat. § 20-17.4(a)(7) violated his procedural and substantive due process rights. Upon review, we reverse the trial court's decision.

### A. Double Jeopardy

[1] Defendant first argues the trial court erred because prosecuting him for DWI subjects him to double jeopardy. Specifically, he argues that his prior one-year CDL disqualification under N.C. Gen. Stat. § 20-17.4(a)(7) constitutes a prior criminal punishment. We agree.

The Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also Benton v. Maryland*, 395 U.S. 784, 795 (1969) (incorporating the Fifth Amendment's

Double Jeopardy Clause against the states through the Fourteenth Amendment). "The Law of the Land Clause incorporates similar protections under the North Carolina Constitution." *State v. Evans*, 145 N.C. App. 324, 326–27, 550 S.E.2d 853, 856 (2001) (quotation marks omitted) (quoting *State v. Oliver*, 343 N.C. 202, 205, 470 S.E.2d 16, 18 (1996)); *see* N.C. Const. art. I, § 19.

Accordingly, an individual cannot face multiple criminal punishments for the same offense. *See State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). However, the Double Jeopardy Clause does not protect against receiving both a civil penalty and a criminal punishment for the same offense. *See State v. Wagoner*, 199 N.C. App. 321, 332, 683 S.E.2d 391, 400 (2009). Furthermore, "[a]n Act found to be civil cannot be deemed punitive as applied to a single individual in violation of the Double Jeopardy . . . clause because the impact on a single defendant is irrelevant in a double jeopardy analysis." *State v. Reid*, 148 N.C. App. 548, 552, 559 S.E.2d 561, 564 (2002) (quotation marks and citation omitted) (alterations in original).

In *Hudson v. United States*, the U.S. Supreme Court outlined a two-part test to determine whether a punishment is criminal or civil. 522 U.S. 93, 99 (1997). First, "[a] court must . . . ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Id.* (quoting *United States v. Ward*, 448 U.S. 242, 248 (1980)). This portion of the *Hudson* test is "a matter of statutory construction." *Id.* (citing *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)). If the legislature indicated the punishment is criminal, then the Double Jeopardy Clause applies. *See id.*

Under the second portion of the *Hudson* test, "[e]ven in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty[.]" *Id.* (internal citations and quotation marks omitted) (second alteration in original). Thus, a civil penalty can have such a punitive effect that it becomes a criminal punishment for double jeopardy purposes.

To determine whether a civil penalty is so punitive that it becomes a criminal punishment, we examine seven factors:

(1) [w]hether the sanction involves an affirmative disability or restraint;

(2) whether it has historically been regarded as a punishment;

(3) whether it comes into play only on a finding of *scienter*;

(4) whether its operation will promote the traditional aims of punishment - retribution and deterrence;

(5) whether the behavior to which it applies is already a crime;

(6) whether an alternative purpose to which it may rationally be connected is assignable for it; and

(7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99-100 (alteration in original) (quotation marks omitted) (quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168-169 (1963)). When we analyze these factors, "no one factor should be considered controlling." *Id.* at 101. Furthermore, "only the clearest proof [of these factors] will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100 (quotation marks and citation omitted).

North Carolina courts have previously applied this type of analysis to 30-day license revocations under N.C. Gen. Stat. § 20-16.5 in *Oliver*, 343 N.C. 202, 470 S.E.2d 16, *Evans*, 145 N.C. App. 324, 550 S.E.2d 853, and *Reid*, 148 N.C. App. 548, 559 S.E.2d 561.

In *Oliver*, our Supreme Court decided whether a 10-day license revocation after a DWI arrest subjected an individual to a double jeopardy violation. *Oliver*, 343 N.C. at 210, 470 S.E.2d at 21; *see* N.C. Gen. Stat. § 20-16.5 (2011). There, our Supreme Court held no double jeopardy violation occurred because the revocation was only a civil remedial sanction. *Id.* at 210, 470 S.E.2d at 21.

In *Evans*, this court considered whether an amended version of N.C. Gen. Stat. § 20-16.5 requiring a thirty-day revocation constituted a double jeopardy violation. 145 N.C. App. at 325, 550 S.E.2d at 855. In that case, we applied the *Hudson* test to determine "N.C.G.S. § 20-16.5 is neither punitive in purpose nor effect[.]" *Id.* at 334, 550 S.E.2d at 860. However, we cautioned:

[a]lthough we find no punitive purpose on the face of N.C.G.S. § 20-16.5, we are aware that, at some point, a

further increase in the revocation period by the General Assembly becomes excessive, even when considered in light of the well-established goals of N.C.G.S. § 20-16.5. Whether it is a further doubling or tripling of the revocation period, there is a point at which the length of time can no longer serve a legitimate remedial purpose, and the revocation provision could indeed violate the Double Jeopardy Clause.

*Id.* at 332, 550 S.E.2d at 859.

In *Reid,* this Court considered the same version of N.C. Gen. Stat. § 20-16.5 as in *Evans,* but as applied to a CDL revocation. 148 N.C. App. at 550, 559 S.E.2d at 562. There we held that "[a]n Act found to be civil cannot be deemed punitive as applied to a single individual in violation of the Double Jeopardy clause because the impact on a single defendant is irrelevant in a double jeopardy analysis." *Id.* at 552, 559 S.E.2d at 564 (quotation marks and citation omitted) (alteration in original). We thus held, in accordance with *Evans,* no double jeopardy violation occurred. *See id.* at 553–54, 559 S.E.2d at 564–65.

In the present case, Defendant argues his prosecution for DWI subjects him to double jeopardy because his CDL was already revoked for one year under N.C. Gen. Stat. § 20-17.4. In this case of first impression, we now apply the *Hudson* two-part test to determine whether Defendant's CDL disqualification is a prior criminal punishment. We distinguish our analysis of N.C. Gen. Stat. § 20-17.4 in the instant case from our analysis of N.C. Gen. Stat. § 20-16.5 in *Oliver, Evans,* and *Reid.*

Under the first portion of the *Hudson* test, driver's license revocations are not expressly or impliedly criminal in nature. *See Oliver,* 343 N.C. at 207, 470 S.E.2d at 20 ("Historically, this Court has long viewed drivers' license revocations as civil, not criminal, in nature."); *Seders v. Powell,* 298 N.C. 453, 462, 259 S.E.2d 544, 550 (1979) ("[R]evocation proceedings are civil because they are not intended to punish the offending driver but to protect other members of the driving public."); *Joyner v. Garrett,* 279 N.C. 226, 234, 182 S.E.2d 553, 559 (1971) ("Proceedings involving the suspension or revocation of a license to operate a motor vehicle are civil and not criminal in nature, and the revocation of a license is no part of the punishment for the crime for which the licensee was arrested.").

Still, by applying the *Kennedy* factors outlined in the second portion of the *Hudson* test, we conclude N.C. Gen. Stat. § 20-17.4 is so punitive it becomes a criminal punishment.

Defendant concedes the first three *Kennedy* factors do not support a finding that N.C. Gen. Stat. § 20-17.4 constitutes a criminal punishment. Under the first *Kennedy* factor, since license revocation does not "approach[] the infamous punishment of imprisonment," it does not "involve[] an affirmative disability or restraint." *Hudson*, 522 U.S. at 104 (quotation marks and citation omitted); *see Evans*, 145 N.C. App. at 332, 550 S.E.2d at 859. Under the second *Kennedy* factor, license revocation has not historically been viewed as punishment. *See id.* at 333, 550 S.E.2d at 859. Rather, punishment has historically been addressed by the DWI criminal statutes. *See id.* "Moreover, revocation of a privilege voluntarily given, such as a driver's license in this case, is characteristically free of the punitive element." *Id.* (citation and quotation marks omitted). Under the third *Kennedy* factor, scienter is not an element of the CDL disqualification provisions of N.C. Gen. Stat. § 20-17.4. *See id.* at 333, 550 S.E.2d at 859-60.

Nonetheless, the remaining four *Kennedy* factors support the conclusion that N.C. Gen. Stat. § 20-17.4 is so punitive it becomes a criminal punishment.

Under the fourth *Kennedy* factor, N.C. Gen. Stat. § 20-17.4 "promote[s] the traditional aims of punishment—retribution and deterrence." *Hudson*, 522 U.S. at 99. Our analysis in the instant case differs from our analysis of the 10-day license revocation in *Oliver* and the 30-day license revocation in *Evans*. In *Oliver* and *Evans*, we acknowledged that license revocation has a retributive and deterrent effect. *Oliver*, 343 N.C. at 209, 470 S.E.2d at 21 ("We do not pretend to ignore that a driver's license revocation, even of short duration, may, for some, have a deterrent effect."); *Evans*, 145 N.C. App. at 333-34, 550 S.E.2d at 860 ("We acknowledge that [license revocation] operates as a deterrent to driving while impaired."). On balance, however, the *Oliver* and *Evans* courts held "any deterrent effect a driver's license revocation may have upon the impaired driver is merely incidental to the overriding purpose of protecting the public's safety." *Evans*, 145 N.C. App. at 333, 550 S.E.2d at 860 (quoting *Oliver*, 343 N.C. at 209-10, 470 S.E.2d at 21). In reaching this conclusion, those courts emphasized the short-term nature of the license revocation. *See Oliver*, 343 N.C. at 209, 470 S.E.2d at 21 ("[T]he ten-day driver's license revocation . . . [is] neither [an] excessive nor overwhelmingly dispropor-

tionate response[] to the immediate dangers an impaired driver poses to the public and himself. . . . [S]wift action is required to remove the unfit driver from the highways in order to protect the public."). Here, given the substantial length of the one-year disqualification, we reach the opposite conclusion: any remedial purpose behind N.C. Gen. Stat. § 20-17.4 is incidental to its deterrent and retributive goals.

*Short-term* license revocation does have a primary remedial purpose. It immediately removes drunk drivers from the road while they are incapacitated and "serves as an interim highway safety measure until after a person is afforded a trial." *Henry v. Edmisten*, 315 N.C. 474, 489-90, 340 S.E.2d 720, 731 (1986). One-year CDL disqualification, on the other hand, does not primarily serve the same purpose. While it may have some remedial effect, we conclude the main purpose of such a lengthy disqualification period is to deter drunk driving. N.C. Gen. Stat. § 20-17.4 serves to let "persons who choose to drive while impaired know that if their actions are observed by law enforcement, they will be charged with DWI and face a temporary license revocation." *Evans*, 145 N.C. App. at 333, 550 S.E.2d at 860.

We acknowledge that in *Reid*, we held a 30-day CDL revocation primarily served a remedial purpose because "the state has a greater interest in the public's safety regarding commercial drivers because there exists a greater risk of harm." 148 N.C. App. at 553, 559 S.E.2d at 564. However, given the substantial length of CDL disqualification under N.C. Gen. Stat. § 20-17.4, we do not find this argument dispositive. Here, one-year CDL disqualification primarily serves a punitive and deterrent purpose.

Under the fifth *Kennedy* factor, the State appropriately concedes drunk driving, the underlying behavior covered by N.C. Gen. Stat. § 20-17.4, is already a crime. *See Evans*, 145 N.C. App. at 334, 550 S.E.2d at 860.

"The final two factors under the *Kennedy* analysis require us to decide whether there is a remedial purpose behind [N.C. Gen. Stat. § 20-17.4], and if so, whether the statute is excessive in relation to the remedial purpose." *Id.*

Any license revocation or suspension based on DWI arrest serves, *inter alia*, the remedial purpose of "removing impaired drivers from the highway while they are a risk to themselves and others." *Id.* The merits of this goal are undeniably laudable. Indeed, "[t]he carnage caused by drunk drivers is well documented and needs no detailed recitation here." *South Dakota v. Neville*, 459 U.S. 553, 558 (1983).

However, a one-year CDL disqualification is excessive in relation to this remedial purpose.

In *Evans*, we held a 30-day license revocation is not excessive. 145 N.C. App. at 334, 550 S.E.2d at 860. However, we also cautioned that:

> at some point, a further increase in the revocation period by the General Assembly becomes excessive, even when considered in light of the well-established goals of N.C.G.S. § 20-16.5. Whether it is a further doubling or tripling of the revocation period, there is a point at which the length of time can no longer serve a legitimate remedial purpose, and the revocation provision could indeed violate the Double Jeopardy Clause.

*Id.* at 332, 550 S.E.2d at 859. In the case at hand, there is not merely a "doubling or tripling," but rather a twelvefold increase in the disqualification period. We conclude this has become excessive in relation to any remedial purpose behind N.C. Gen. Stat. § 20-17.4.

Based on our review of the *Kennedy* factors, we thus conclude N.C. Gen. Stat. § 20-17.4 is so punitive that it becomes a criminal punishment. Therefore, prosecution for DWI subsequent to license disqualification under N.C. Gen. Stat. § 20-17.4 constitutes impermissible double jeopardy. *See Hudson*, 522 U.S. at 99.

## B. Due Process

[2] Defendant next argues his one-year CDL disqualification under N.C. Gen. Stat. § 20-17.4 violated his due process rights. Upon review, we conclude Defendant's due process claim is moot.

We will consider a matter moot when "the subject matter of the litigation has been settled between the parties or has ceased to exist." *Kendrick*, 272 N.C. at 722, 159 S.E.2d at 35. *But cf. Black*, 197 N.C. App. at 375–76, 677 S.E.2d at 201 (holding a claim is not moot when "collateral legal consequences of an adverse nature" are expected). In this regard, a claim is moot when the claimant has no available remedy. *See Roberts v. Madison Cnty. Realtors Ass'n*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996) ("A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy. . . . Thus, the case at bar is moot if [an intervening event] had the effect of leaving plaintiff with no available remedy.").

**STATE v. McKENZIE**

[225 N.C. App. 208 (2013)]

Here, the subject of Defendant's due process claim is his one-year CDL disqualification under N.C. Gen. Stat. § 20-17.4. The disqualification became effective 4 July 2010 and terminated 4 July 2011. Nothing in the record indicates Defendant is currently disqualified from holding a CDL. Furthermore, Defendant does not contend any "collateral legal consequences" are expected. *See Black*, 197 N.C. App. at 375-76, 677 S.E.2d at 201. We therefore conclude Defendant's due process claim is moot because he has no available remedy. *See State v. Stover*, 200 N.C. App. 506, 509-10, 685 S.E.2d 127, 130-31 (2009) (holding a claim involving criminal sentencing was moot because the defendant had already served the sentence); *In re Swindell*, 326 N.C. 473, 474-75, 390 S.E.2d 134, 135 (1990) (holding a juvenile's appeal of a trial court order sending him to a "training school" was moot because he had already been released from the school).

Although Defendant's due process claim is moot, we believe N.C. Gen. Stat. § 20-17.4 raises due process concerns because it does not afford defendants any opportunity for a hearing. Nonetheless, in the absence of a justiciable claim, it is the role of the state legislature, not this Court, to remedy constitutionally suspect statutes. Therefore, we decline to further address the substantive merits of Defendant's due process claim.

## IV. Conclusion

We conclude the one-year disqualification of a CDL under N.C. Gen. Stat. § 20-17.4 is so punitive it becomes a criminal punishment, subjecting Defendant to double jeopardy. Consequently, Defendant cannot subsequently face prosecution for DWI. We further conclude Defendant's due process claim is moot because his one-year CDL disqualification has expired. Based on our double jeopardy determination, the trial court's decision is

REVERSED.

Judge CALABRIA concurs.

Judge HUNTER, Robert C. dissents in a separate opinion.

HUNTER, Robert C., Judge, dissenting.

Because I conclude that defendant's prosecution for Driving While Impaired ("DWI") does not subject him to double jeopardy under the two-part test set out in *Hudson v. United States*, 522 U.S.

93, 99-100, 139 L. Ed. 2d 450, 492-93 (1997), I must respectfully dissent. I would affirm the Superior Court's order on the issue of double jeopardy. However, since defendant's due process claim should be raised in a civil action, not in the present criminal action against him, I do not believe the Superior Court had jurisdiction to consider this claim. Thus, I would reverse the Superior Court order as it relates to defendant's due process claim and remand the matter back to the Superior Court for entry of an order consistent with this opinion.

## Background

Pursuant to N.C. Gen. Stat. § 20-7(a)(2), (i) and § 20-37.13, defendant held a Class A Commercial Driver's license ("CDL"), issued to him on 9 August 1996. Defendant renewed his CDL in 2000, 2005, and 2010.

On 4 July 2010, defendant was operating a noncommercial motor vehicle and was pulled over by North Carolina State Highway Patrol Officer D.M. Rich. Defendant submitted to a chemical test of his breath. Officer Rich took defendant before Magistrate Albert Alabaster who issued a "Revocation Order When Person Present" pursuant to N.C. Gen. Stat. § 20-16.5. Defendant's CDL was revoked for 30 days based on the Magistrate's finding that defendant had an alcohol concentration of 0.08 or more.[1] After the expiration of 30 days, defendant could reclaim his driver's license by paying a $100 civil revocation fee to the Duplin County Clerk of Superior Court. At the bottom of the Revocation Order, it explained defendant's right to have a hearing if he wanted to contest the validity of the revocation. To do so, defendant was required to request a hearing within ten days of the effective date of revocation. There is no indication that defendant exercised this right.

On 20 July 2010, the Division of Motor Vehicles ("DMV") sent defendant a notice informing him that his CDL would be automatically disqualified for a period of one year pursuant to N.C. Gen. Stat. § 20-17.4(a)(7). The notice also stated that defendant was not entitled to a hearing on the disqualification.

On 25 August 2011, defendant filed a motion to dismiss his criminal DWI charge for three reasons. First, defendant contended that the failure to provide him with a procedural mechanism to challenge his CDL disqualification violated his procedural and substantive due process rights. Second, defendant argued that the civil revocation of

1. Before the Superior Court, the parties attested, in their undisputed findings of fact, that the Magistrate revoked defendant's CDL and physically seized it.

his CDL and his prosecution for DWI violates his protection against double jeopardy. Finally, defendant claimed he was denied equal protection because the DMV did not take action against drivers in the same position as defendant prior to January 2010.[2] On 6 September 2011, the Duplin County District Court granted defendant's motion and dismissed defendant's DWI charge after concluding that defendant's due process rights and protection against double jeopardy were violated ("District Court order"). The State appealed the District Court order to Superior Court pursuant to N.C. Gen. Stat. § 15A-1432.

On 9 March 2012, the Duplin County Superior Court issued an order ("Superior Court order") reversing the District Court order, reinstating defendant's charge of DWI, and remanding the matter back to District Court. The Superior Court order also specifically noted that an appeal of this order was "appropriately justiciable in the appellate division as an interlocutory matter." Defendant appealed the Superior Court order on 19 March 2012.

### Arguments

Defendant first argues that prosecuting him for DWI in addition to revoking his CDL pursuant to N.C. Gen. Stat. § 20-17.4(a)(7) subjects him to multiple punishments for the same offense in violation of the Double Jeopardy clause. Thus, the Superior Court erred by reinstating the DWI charge against him. I do not agree.

"The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009), *appeal dismissed and disc. review denied*, 363 N.C. 857, 694 S.E.2d 766 (2010); *see also Piedmont Triad Reg'l Water Auth. v. Sumner Hills, Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001) (*"[D]e novo* review is ordinarily appropriate in cases where constitutional rights are implicated." (citations omitted)).

"The Double Jeopardy Clause prohibits a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *State v. Evans*, 145 N.C. App. 324, 326, 550 S.E.2d 853, 856 (2001) (internal quotation marks omitted). "The Law of the Land Clause incorporates similar protections under the North Carolina Constitution." *State v. Oliver*, 343 N.C. 202, 205, 470 S.E.2d 16, 18

---

2. It should be noted that although defendant raised an equal protection claim in his motion to dismiss, this issue was not addressed by the District or Superior court. Moreover, it was not raised in defendant's appeal to this Court. Therefore, we will not address this issue on appeal.

(1996). While it protects an individual "against the imposition of multiple criminal punishments for the same offense," the Double Jeopardy Clause "does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." *Hudson*, 522 U.S. at 98-99, 139 L. Ed. 2d at 458.

To determine whether a punishment is criminal or civil for double jeopardy purposes, *Hudson* established a two-part inquiry. 522 U.S. at 99, 139 L. Ed. 2d at 459. First, the court must determine "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or another." *Id.* (internal quotation marks omitted). This first step involves principles of statutory interpretation and construction. *Evans*, 145 N.C. App. at 329-30, 550 S.E.2d at 857-58.

Second, "[e]ven in those cases where the legislature has indicated an intention to establish a civil penalty," the court must examine "whether the statutory scheme was so punitive either in purpose or effect . . . as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* at 327, 550 S.E.2d at 856 (internal quotation marks and citations omitted). In evaluating the second part of the inquiry, the Supreme Court advanced the seven factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 660-61 (1963), as "useful guideposts[.]" *Evans* at 332, 550 S.E.2d at 859. Those seven factors are:

> (1) hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Hudson*, 522 U.S. at 99-100, 139 L. Ed. 2d at 459 (internal quotation marks omitted). In applying the factors, "no one factor is controlling[,]" *Evans*, 145 N.C. App. at 328, 550 S.E.2d at 856, and "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 100, 139 L. Ed. 2d at 459 (internal quotation marks omitted).

**STATE v. McKENZIE**

[225 N.C. App. 208 (2013)]

With regard to the first step of the *Hudson* inquiry, while N.C. Gen. Stat. § 20-17.4 (2011) is not expressly labeled criminal or civil by the legislature, our Supreme Court "has long viewed drivers' license revocations as civil, not criminal, in nature[,]" *Oliver*, 343 N.C. at 207-08, 470 S.E.2d at 20, and has focused on the remedial purpose of the revocations.[3] *Henry v. Edmisten*, 315 N.C. 474, 495, 340 S.E.2d 720, 734 (1986). Defendant contends that the purpose of N.C. Gen. Stat. § 20-17.4 is fundamentally different than the revocation statute at issue in *Oliver* because the length of time the driver's license is revoked is longer. However, I conclude that the one-year revocation in N.C. Gen. Stat. § 20-17.4 still has a rational remedial purpose for two primary reasons. First, CDL penalties are much more severe in general. For example, a violation of N.C. Gen. Stat. § 20-142.1 through 142.5 when the driver is operating a commercial motor vehicle leads to automatic disqualification of that person's CDL for 60 days for a first violation. N.C. Gen. Stat. § 20-17.4(k). However, for noncommercial drivers, a violation of the same statutes constitutes an infraction and does not automatically result in a revocation. N.C. Gen. Stat. § 20-176(a) (2011). Second, the CDL penalty violations are more severe due to the large threat of danger the types of vehicles driven with a commercial license pose to other drivers. This Court has noted that "[a] Class A commercial driving privilege encompasses some of the largest vehicles on the road." *State v. Reid*, 148 N.C. App. 548, 553, 559 S.E.2d 561, 564 (2002). The classes of vehicles are based solely on a vehicle's weight. Pursuant to N.C. Gen. Stat. § 20-4.01(2a) (2011), a Class A motor vehicle includes any vehicle that has either of the following:

> a. . . . [A] combined [Gross Vehicle Weight Rating] of at least 26,001 pounds and includes as part of the combination a towed unit that has a [Gross Vehicle Weight Rating] of at least 10,001 pounds.

> b. . . . [A] combined [Gross Vehicle Weight Rating] of less than 26,001 pounds and includes as part of the combination a towed unit that has a [Gross Vehicle Weight Rating] of at least 10,001 pounds.

---

3. A disqualification of one's driver's license is analogous to a revocation or suspension. Disqualification is defined as "[a] withdrawal of the privilege to drive a commercial motor vehicle." N.C. Gen. Stat. § 20-4.01(5b) (2011). Similarly, a revocation is defined as "[t]ermination of a licensee's or permittee's privilege to drive or termination of the registration of a vehicle for a period of time stated in an order of revocation or suspension. The terms 'revocation' or 'suspension' or a combination of both terms shall be used synonymously." N.C. Gen. Stat. § 20-4.01(36).

A Class A motor vehicle includes 18-wheeler tractor trailers. Consequently, "[a] commercial driver's license is an extraordinary privilege which carries with it additional responsibilities[,]" and "the state has a greater interest in the public's safety regarding commercial drivers because there exists a greater risk of harm." *Reid*, 148 N.C. App. at 553, 559 S.E.2d at 564. Thus, I am not persuaded that our Supreme Court's conclusion that license revocation statutes are civil, as stated in *Oliver*, 343 N.C. at 207-08, 470 S.E.2d at 20, does not apply to the statute at issue here simply because the length of the revocation period is longer.

With regard to the second step of the *Hudson* inquiry, I do not believe defendant has established the "clearest proof" necessary to transform a civil penalty into a criminal one. *Hudson*, 522 U.S. at 100, 139 L. Ed. 2d at 459. In applying the first three *Kennedy* factors, defendant concedes that they do not support a finding of criminal punishment.

Under the fourth factor, the Court must determine whether the sanction promotes the "traditional aims of punishment—retribution and deterrence." *Id.* at 99, 139 L. Ed. 2d at 459. The "mere presence" of a deterrent effect is not enough to render a sanction criminal. *Id.* at 105, 139 L. Ed. 2d at 463; *see also State v. Beckham*, 148 N.C. App. 282, 286, 558 S.E.2d 255, 258 (2002). While it is clear that a one-year suspension of defendant's CDL would certainly have a deterrent effect, that effect is substantially outweighed by the overriding remedial purpose of protecting the public from the great harm posed by commercial vehicles. Moreover, the deterrent effect is mitigated by the fact that the statute only disqualifies defendant from driving a commercial vehicle, not his personal vehicle. While the majority focuses on the fact that other courts emphasized the short-term nature of the revocation when determining whether the deterrent effect outweighed any remedial purpose, *see Oliver*, 343 N.C. at 209, 470 S.E.2d at 21, and *Evans*, 145 N.C. App. at 332, 550 S.E.2d at 859, the statutes at issue in those cases dealt with regular driver's licenses, not commercial vehicle driver's licenses. Due to the greater danger posed to the public by the nature of the vehicles driven with a Class A CDL, those courts emphasis on the short-term nature of the revocation is not applicable to the situation here. Therefore, even though the revocation period for defendant's CDL is longer than that of other license revocation statutes, I conclude that the deterrent effect of N.C. Gen. Stat. § 20-17.4(a)(7) is insufficient to implicate double jeopardy.

The fifth *Kennedy* factor examines whether the behavior that constitutes a violation of N.C. Gen. Stat. § 20-17.4(a)(7) could also

serve as a basis for another crime. *Hudson*, 522 U.S. at 99, 139 L. Ed. 2d at 459. Here, it is uncontroverted that violating N.C. Gen. Stat. § 20-16.5 automatically triggers the civil disqualification of defendant's CDL pursuant to N.C. Gen. Stat. § 20-17.4(a)(7).

"The final two factors under the *Kennedy* analysis require us to decide whether there is a remedial purpose behind [N.C. Gen. Stat. § 20-17.4(a)(7)], and if so, whether the statute is excessive in relation to the remedial purpose." *Evans*, 145 N.C. App. at 334, 550 S.E.2d at 860. As already discussed, I believe that N.C. Gen. Stat. § 20-17.4(a)(7), along with other license revocation statutes, have a remedial purpose— protecting public safety. Moreover, I disagree with the majority's conclusion that the statute is excessive given the nature of the vehicles at issue and the greater risk of harm they present. In applying the final *Kennedy* factors, I acknowledge that this Court has cautioned that:

> at some point, a further increase in the revocation period by the General Assembly becomes excessive, even when considered in light of the well-established goals of N.C.G.S. § 20-16.5. Whether it is a further doubling or tripling of the revocation period, there is a point at which the length of time can no longer serve a legitimate remedial purpose, and the revocation provision could indeed violate the Double Jeopardy Clause.

*Evans*, 145 N.C. App. at 332, 550 S.E.2d at 859. However, the statute at issue in *Evans* involved revocation of a regular driver's license, not a CDL, and "the state has a greater interest in the public's safety regarding commercial drivers because there exists a greater risk of harm." *Reid*, 148 N.C. App. at 553, 559 S.E.2d at 564. Therefore, I do not agree with the majority's conclusion that the Court's warning in *Evans* is applicable to the statute at issue here.

Based on my application of the two-part *Hudson* test, I conclude that prosecuting defendant on his DWI charge would not violate double jeopardy. Consequently, I would affirm the trial court's order on this issue.

Next, defendant contends that his one-year CDL disqualification violated his due process rights. The majority concludes that because the one-year revocation terminated 4 July 2011, his due process claim is moot. While I agree with the majority that his claim is moot, I believe the issue is a matter of public interest and constitutes an exception to the mootness doctrine. "Even if moot, however, this

Court may, if it chooses, consider a question that involves a matter of public interest, is of general importance, and deserves prompt resolution." *N.C. State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989); *see also Thomas v. N.C. Dept. of Human Res.*, 124 N.C. App. 698, 705, 478 S.E.2d 816, 820 (1996) (noting that one of the five recognized exceptions to the mootness doctrine is a question that involves a matter of public interest), *aff'd per curiam*, 346 N.C. 268, 485 S.E.2d 295 (1997). Here, the present controversy presents such a matter of public interest given the fact that the statute at issue results in an automatic revocation of an individual's CDL without a hearing. Therefore, even though defendant's claim is moot, I would review it under the public interest exception.

However, even though I conclude that defendant's claim is reviewable, it fails. Defendant's argument is not properly before this Court. Essentially, defendant is attempting to assert a due process claim with regard to the civil CDL disqualification in an appeal of his criminal DWI charge. Defendant's argument should be raised in a civil claim against the DMV, not in a criminal appeal. Our Supreme Court has noted that:

> It is well established that the same motor vehicle operation may give rise to two separate and distinct proceedings. One is a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked. The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. Each action proceeds independently of the other and the outcome of one is of no consequence to the other.

*Joyner v. Garrett*, 279 N.C. 226, 238, 182 S.E.2d 553, 562 (1971). Accordingly, defendant's claim was not properly before the Superior Court nor is it properly before this Court. Thus, I believe the Superior Court erred in considering defendant's due process claim, and I would reverse the Superior Court order and remand for it to enter an order consistent with this opinion. Although I would decline to address defendant's due process claim on appeal, I also note my concern, as did the majority, that the failure to provide defendant with any procedural mechanism to challenge the disqualification may constitute a due process violation. However, that argument must be raised in a separate civil proceeding.

Conclusion

Based on an application of the two-step *Hudson* inquiry, I conclude that the revocation of defendant's CDL is a civil sanction. Therefore, prosecuting defendant for DWI would not violate his double jeopardy protection, and I would affirm the Superior Court order on this issue. With regard to defendant's due process claim, I would hold that the Superior Court did not have jurisdiction to review this claim. Thus, in addressing it, the Superior Court erred, and I would reverse its order on this issue.